SOLOMON HOFFINE V. ANDREW J. EWINGS.

FILED NOVEMBER 8, 1900.     No. 11,433.

1. **Instructions.** Instructions copied in the opinion examined, and the giving of the same *held* to be without prejudicial error.

2. **Adverse Possession.** Where a person claims title to real estate by reason of adverse possession, it is necessary to prove that such person for a period of ten years next before the commencement of the action was in actual, continued and notorious possession of the land claimed, claiming the same against all persons. *Horbach v. Miller*, 4 Nebr., 31, followed.

3. ———: CONSTRUCTIVE POSSESSION. Possession of real estate for a period long enough to ripen into a good title, among other essential elements, must be characterized by opposition to, and inconsistency with, the constructive possession of the legal proprietor, as well as all others asserting or claiming title to such property.

4. **Construction of "Hostile" Applied to Possession.** The word "hostile," when applied to the possession by an occupant of real estate holding adversely, is not to be construed as showing ill-will or that he is an enemy of the person holding the legal title, but is applied to an occupant who holds and is in possession as owner and therefore holds such possession against all other claimants of the land. *Ballard v. Hansen*, 33 Nebr., 861, followed.

5. **Word "Hostile" Used in Instructions.** The use of the word "hostile" in an instruction, as describing the character of the possession of real estate under which title is claimed by adverse possession, while not to be commended, *held* not prejudicial error.

6. **Instructions, How Construed.** Instructions are to be considered together, to the end that they may be properly understood, and when so construed, if, as a whole, they fairly state the law ap-

plicable to the evidence, error can not be predicated upon the giving of the same.

7. **New Trial:** NEWLY-DISCOVERED CUMULATIVE EVIDENCE. A new trial will not be granted for newly-discovered cumulative evidence, unless the proposed evidence be of such a weighty character as would probably change the result of the trial.

8. ———: NEWLY-DISCOVERED EVIDENCE: RULE. Before a party can rightfully claim a new trial on the ground of newly-discovered evidence, he is required to show that he could not, by the exercise. of reasonable diligence, have discovered and produced the proposed evidence at the trial had in the case.

ERROR to the district court for Otoe county. Tried below before FAWCETT, J. *Affirmed.*

*John O. Watson, John V. Morgan* and *Frank Irvine,* for plaintiff in error.

*Sloan & Moran, contra.*

HOLCOMB, J.

As presented to us, a proper disposition of this action hinges upon the correctness of certain instructions given to the jury and excepted to, and the ruling of the trial court on a motion for a new trial on the ground of newly-discovered evidence. The action is one of ejectment. The land in controversy is known as accretions caused by the recession of the channel of the Missouri river, on the borders of which the land lies. The plaintiff claims as the legal holder and owner of the title to the land to which the land in controversy is an alleged accretion, as aforesaid. The defendant claims by virtue of adverse possession. The trial to the court and a jury resulted in a verdict for the plaintiff, upon which judgment was rendered in his favor. The defendant prosecutes error.

Two instructions are complained of, being Nos. 4 and 5. With the instructions to which exceptions are taken, we give also the first instruction, believing it will assist in a more intelligent understanding and discussion of the other two.

"Inst. No. 1. That under the pleadings, the law and the evidence in this case the only question for your consideration is the question of adverse possession of the property in controversy set up by the defendant Solomon Hoffine in his answer herein, wherein he alleges that he has been in the actual, open, notorious, and exclusive possession of the land in controversy, claiming the same adversely to the plaintiff and all the world for more than ten years next before the commencement of this action; and the burden is upon the defendant to establish such defense by a preponderance of the evidence.

"Inst. No. 4. You are instructed that adverse possession sufficient to defeat a legal title must be hostile in its inception and continue uninterruptedly for ten years. It must also be open, notorious, adverse and exclusive and must be held during all of such time under a claim of ownership by the occupant, and all of these facts must be proved by a preponderance of the evidence.

"Inst. No. 5. If you believe from the evidence that the defendant, Solomon Hoffine, not less than ten years prior to the commencement of this suit, entered into possession of the lands in controversy and cultivated said lands or fenced the same, or erected improvements of any kind thereon or did other acts of such a character as to clearly show that he was occupying said lands and claiming the same as his own, and during all of said ten years continued to so occupy said lands, claiming during all of said time to be the owner of the same, and never during any of said period of ten years abandoned said land, but during all of said time continued openly, notoriously, adversely and exclusively to occupy and claim the same as his land, then you are instructed that said acts on the part of said defendant Hoffine would constitute adverse possession within the meaning of the law and would entitle the defendant to a verdict at your hands.   But if the defendant Hoffine has failed to establish any of said acts by a preponderance of the evidence your verdict should be for the plaintiff."

It is urged that the fourth instruction is erroneous, because of the use of the word "hostile" in the manner in which it appears therein. It may be stated in the outset that an examination of the authorities in this state discloses that the word is infrequently used in expressing the character or nature of the possession of real estate which may in time ripen into a perfect title. At the same time it is to be borne in mind that it is not every possession, however long and continuous, which will give to an occupant of real estate a good title thereto as against the holder of the legal title. The authorities are uniform, and grounded on fundamental principles, to the effect that such possesion must be in opposition and adverse to the constructive possession of the holder of the legal title. It must be under a claim of ownership which is inimical to the possession of the legal proprietor and all others. In *Horbach v. Miller*, 4 Nebr., 31, 48, which may be regarded as the parent case on the subject in this state, an instruction "that if they [the jury] believed from the evidence that the plaintiff in error, for ten years next before the commencement of the action, was in the actual, continued, and notorious possession of the land in controversy, claiming the same as his own against all persons, they must find for the plaintiff in error," was approved as a correct statement of the law. "The possession must be inconsistent with the title of the true owner, and not subject to the rights of other parties." *Gatling v. Lane*, 17 Nebr., 77, 79. "Such possession, when adverse, is sufficient if actual, open, notorious, and exclusive to give the party in possession title to the property." *Crawford v. Galloway*, 29 Nebr., 261, 267. "* * * it is necessary that he should actually hold the land as his own during that period, in opposition to the constructive possession of the legal proprietor." Second paragraph syllabus, *Smith v. Hitchcock*, 38 Nebr., 104. In the opinion in the same case, on page 109, says the author: "To constitute her possession or occupancy adverse, she must have actually held and occupied the property as

her own, and in opposition and hostility to the concurrent and constructive possession of the owner of the legal title. There is no evidence in the record that establishes, or tends to establish, * * * that she ever held after her entry in hostility to the defendant in error." Says LAKE, C. J., in *Roggencamp v. Converse*, 15 Nebr., 105, 108: "They claimed on the trial, and produced an abundance of evidence to show that the plaintiff's possession was simply as lessee under the title conveyed by the deed, and not in hostility to it." From the excerpts above given, the views of this court as to the character and requisites of the possession required in order to obtain title are readily discernible.

Counsel suggests that the words "hostile" and "hostility," although proper when employed between those versed in law and skilled in technical terms, are objectionable when used to jurymen, as they are apt to take them to signify ill-will, enmity, antagonism and the like. It is true, words sometimes convey different meanings to different minds, and have a technical as well as a common meaning. We do not, however, think the distinction contended for can be recognized. The test is whether, by a fair interpretation of the words used, in connection with other instructions, the jury could have been misled into an erroneous understanding of the law of the case as presented to them by the court. Possession of real estate for a period long enough to ripen into a good title, among other essential elements, according to the views above expressed, must be characterized by opposition to, and inconsistency with, the constructive possession of the legal proprietor, as well as all others asserting or claiming title to such property. This essential element is, as we have seen, at times expressed as "hostile" or "in hostility." Whether this expression conveys the meaning intended as clearly and accurately as some other term might, it is unnecessary here to determine. The decisive question is whether its use in the instruction excepted to is prejudicial error. For its disapproval chief reliance

is placed on the expression by this court through MAX-
WELL, C. J., regarding the use of the word in the same
connection in the case of *Ballard v. Hansen,* 33 Nebr., 861,
864. In the instructions given the jury in that case the
words "hostile" and "hostility" were used in defining the
character of the possession required, *e. g.,* "Adverse pos-
session, as relied upon by the plaintiffs in this action, is
the open, actual, exclusive, notorious, and hostile occu-
pancy of land, and claim of right, with the intention to
hold it against the true owner and all other parties," etc.
In reviewing the proceedings of the trial court in the case
mentioned this court held, as announced in the third para-
graph of the syllabus, as follows: "The word 'hostile'
when applied to the possession of an occupant of real
estate holding adversely, is not to be construed as show-
ing ill-will, or that he is an enemy of the person holding
the legal title, but means an occupant who holds, and is
in possession, as owner, and therefore against all other
claimants of the land." In the opinion of the court re-
garding the point decided in the syllabus quoted the
learned author says, at page 865: "The word 'hostile,'
which Webster defines as 'belonging to an enemy; ap-
propriate to an enemy; showing ill-will and malevolence,
or a desire to thwart and injure; occupied by an enemy
or a hostile people; inimical; unfriendly; as, a hostile
force; hostile intentions; a hostile country; hostile to a
sudden change' (Ed. of 1881, 640), does not correctly state
the character of the occupancy necessary to create ad-
verse possession. There need be no ill-will, malevolence,
or desire to injure any one, and the element of hostility
in that sense does not necessarily enter into the case.
What was meant, no doubt, was that the possession of
the plaintiff below must be adverse or against the party
holding the legal title." Further on the writer says: "In
most instances it will be found that the adverse occupant
has entered under a claim of right, and where such occu-
pation has been adverse, open, notorious, and exclusive
for the statutory period, that is sufficient. The word

'hostile,' therefore, does not correctly express the character of the occupancy required, but as this was against the plaintiff below, the defendant below can not complain on that ground." In view of the decision of the court on the point referred to as expressed in the syllabus, which must govern as to the point decided under the holdings of this court, and the language of the author in support of the same, the views last expressed can only be regarded as expressing the individual views of the author, and have no binding force as an opinion of the court on the subject. It was unnecessary to decide, and it was not decided therein, if resort be had to the syllabus in order to determine the question decided, that the use of the word in the instruction was without prejudice, as it was against the defendant below, and the defendant could not, therefore, complain, since it had been before determined that the word had been used in the sense first mentioned, and with such meaning was proper. In the sense of being inimical, adverse or opposed to the right of possession of the holder of the legal title and all others, the use of the word can hardly be said to be erroneous. As synonyms of the word Webster gives inimical, unfriendly, antagonistic, opposed, adverse, etc. "Synonymous" means conveying the same or approximately the same meaning. We thus have "adverse," which is most frequently used in defining the character of the possession required, given as synonymous with the word "hostile." Whether we view the statute favorably as one of repose or otherwise, we think the principle remains that a possession, to ripen into a good title, must be in opposition to all others, including the legal owner, and that this element embraces the idea of hostility in the milder sense of that term; that the use of the term in such connection in judicial proceedings, while not to be commended, is sanctioned by the authorities and that prejudicial error will not arise therefrom.

By resort to the decisions of the courts of other states, we find that the word, in the sense in which we have ap-

plied it, is of general use. In *Clark v. Kirby*, 25 S. W.
Rep. [Tex.], 1096, 1097, it is said: "The statute would
not begin to run until the possession became adverse and
hostile to the owner." To the same effect are *Headrick v.
Fritts*, 93 Tenn., 270; *Allen v. Allen*, 58 Wis., 202; *Davenport v. Sebring*, 52 Ia., 364; *Pease v. Lawson*, 33 Mo., 35.
We therefore conclude that the use of the word in the instruction quoted does not constitute prejudicial error.

It is also urged that the instruction under consideration is faulty because requiring hostility at the inception
of the possession. We regard a fair construction of the
language used as conveying the idea that an adverse possession must exist at the beginning of the period under
which title is claimed, and continue so uninterruptedly for
ten years. The meaning conveyed is that the possession,
from the inception to the end of the period required, was
under a claim of ownership, and therefore opposed to the
constructive possession of the owner of the legal title and
all others. There is in the record evidence to prove that
the defendant entered into possession of the land in controversy with the permission of the then owner and as
his tenant at will, without claim of ownership or other
element of adverse possession. Such possession, if it existed, would not be in opposition to the rights of the legal
owner, and under it, while so existing, nothing could be
claimed by the defendant while so in possession. *Carson v. Broady*, 56 Nebr., 648, 651; *Clark v. Kirby, supra.*
The defendant in his answer alleges an occupancy of the
land adverse in its character at its inception to the legal
title of the plaintiff and his grantors. This was denied in
the reply. Under no theory of the case could he recover,
except by proving that his original entry on the land in
the beginning was inimical to the plaintiff's rights. The
instruction, therefore, appears to be, not only without
prejudice, but pertinent to the issues and the evidence.
The last sentence in this same instruction is quoted incorrectly and criticised as misleading. The mistake in
copying this portion of the instruction probably accounts

for the criticism.   By referring to the instruction hereto-
fore set out it will be observed that it gives the essential
facts or elements of the possession required before a good
title can be perfected, and states that such facts must be
proved by a preponderance of the evidence.   This por-
tion of the instruction, we think, is not calculated to mis-
lead, nor does it incorrectly state the law.   Practically
the same criticism is passed upon the last sentence of the
fifth instruction.·  As construed by counsel, the statement
that a failure to establish any of the acts mentioned in
the instruction as essential to the perfection of a legal
title by adverse possession, is made to apply to the differ-
ent acts by which a claim to ownership may be inferred;
and hence, if defendant failed to prove all of the acts
mentioned indicative of a claim of ownership, he could
not recover.   We hardly think the language used suscept-
ible of the construction thus given.   Such a construction,
it appears to us, would not be giving to the language
used its ordinary and natural meaning.   The facts which
are to be proven by a preponderance of the evidence are
those necessary for the defendant to establish in order
to make out his case under the pleadings.   It required
that the proof should preponderate in his favor as to
adverse possession being taken ten years prior to the
commencement of the suit; that at the beginning, and
under the possession thus entered into, the defendant
did some act or acts, either one of more of those men-
tioned in the instruction, of a character to show clearly
that he claimed the land as the owner; that during such
period he did not abandon his possession, but during all
the time, continued openly, notoriously, adversely and
exclusively to occupy and claim the property as his own.
This, we think, is substantially the effect of the instruc-
tion, and these facts we regard as essential elements to
be established by a preponderance of the evidence in or-
der to justify a verdict for the defendant.

  In considering the instructions to which exceptions are
taken we have constantly borne in mind that the instruc-

tions are to be considered together, to the end that they may be properly understood and construed, and we are impressed with the conviction that the instructions given, as a whole, fairly state the law applicable to the evidence, and that error can not be predicated upon the giving of the same.

In the motion for a new trial one of the grounds assigned was newly-discovered evidence. Affidavits were filed in support of the same, and the ruling of the court in refusing the motion is urged as error. From an examination of the record relating to the motion, we reach the conclusion that the ruling was correct. The proposed evidence we regard as cumulative in character, and not of sufficient weight to render a different verdict probable. The greater portion of defendant's testimony was directed to establishing the time when it was claimed he entered into adverse possession of the land in controversy. This was fixed by the evidence as in the spring of 1883, the exact time not being given. The proposed evidence fixes the time as being March or April of that year. There seems to be no serious controversy over the fact that under a contract of sale afterwards executed, defendant bought certain land in section 36, immediately north and adjoining the land in controversy, and that he began to improve this land, and make preparations to reside upon it, and that work to that end was begun in the spring of 1883, and that a residence was established during the fall of that year. From these facts, the inference is sought to be drawn that he entered into possession of the land in controversy, which is spoken of as the "made lands." Much of the evidence given, and that proposed in the affidavits in support of the claim of newly-discovered evidence, is more in the nature of conclusions of witnesses than statements of fact. They assume that because he entered into possession of the land purchased, he obtained thereby also the possession of the land in controversy, which he claims by a right of adverse possession. No clear distinction is made between

the two tracts, and the evidence-is more or less confusing by reason thereof. The exact time when he entered into possession of the land in controversy, if he did in the spring of 1883, is not, under the evidence, made a vital point in the case. If his theory is accepted, then any time before May 16 of that year is all that is required; and this fact is sought to be established by all or nearly all of the witnesses who testified in his behalf. The evidence opposed to this did not raise an issue as to possession near May 16, either before or after, but long subsequent thereto. So that if possession was shown to have been taken in the spring of 1883, it was clearly prior to the date when it must be taken in order to have existed for ten years before commencement of the action. While in the affidavits in support of the motion for a new trial it is said, in substance, that the affiants are acquainted with the identical land in controversy, and know that the defendant was in possession of it, and claimed the same as the owner, cutting wood, cleaning up under-brush, etc., thereon in March and April, 1883, it is quite apparent from the record, in connection with the affidavits, that they referred to the defendant taking possession of the land in 1883, which land was afterwards conveyed to him by deed, and have reference to the same acts testified to by the defendant and many others who appeared in his behalf on the trial of the case. A new trial will not be granted for newly-discovered cumulative evidence, unless the proposed evidence be of such weighty character as would probably change the result of the trial. *Hill v. Helman*, 33 Nebr., 731; *Gran v. Houston*, 45 Nebr., 813; *Flannagan v. Heath*, 31 Nebr., 776. A stronger reason for sustaining the trial court in its action on the motion is the obvious lack of diligence exercised on the part of the defendant in procuring the evidence to which the motion has reference. The affidavits show the parties to have been old acquaintances of the defendant, that they lived just across the river in Iowa and Missouri, but a short distance from where the defendant had resided

during all of the time covered by the evidence in the case; that they had resided there for twenty years or more, some of them during all their lives; that they assisted the defendant when he moved, from the neighborhood where they resided, to this state; that they had visited him and boarded with him during the period he claimed to have taken possession of the land in controversy; that they had been acquainted with each other during all of the period mentioned and for a long time prior thereto; that during the pendency of the litigation, which covered a period of several years, they were accessible, and the evidence could without difficulty have been procured. Other witnesses bearing the same name, relatives of the defendant, testified in the case. No effort seems to have been made either to discover the evidence or to secure it. There appears to have been an utter lack of diligence on defendant's part regarding the matter. He must have known of its existence, and the most charitable view to be taken is that he had forgotten the fact of the presence of these parties at the time they say they were with him and knew of his entrance into the possession of the land in controversy, at the time claimed. This is not sufficient to excuse defendant and authorize a new trial. *Upton v. Levy,* 39 Nebr., 331. The record discloses that one trial has been had prior to the one now under consideration. The defendant was advised that his claim was disputed and his right to the land challenged. It was incumbent upon him to make every reasonable preparation to sustain the cause of action pleaded in his answer. He must exercise vigilance in securing the evidence of witnesses to sustain his claim as asserted in his pleadings. This, we think the record shows, he failed to do; and before a party can rightfully claim a new trial on the ground of newly-discovered evidence, he is required to show that he could not, by the exercise of reasonable diligence, have discovered and produced the proposed evidence at the trial had in the case. *Fitzgerald v. Brandt,* 36 Nebr., 683;

*Smith v. Hitchcock,* 38 Nebr., 104. His motion for a new trial was, therefore, we think, properly overruled.

From the examination we have been able to give the record, we feel that substantial justice has been administered to the parties litigant, and no good purpose can be subserved by prolonging the litigation. The judgment of the trial court is

AFFIRMED.